1
2
3
4
5
6
7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TAMARA REECE,                          No.  2:23-cv-2499-SCR

12              Plaintiff,

13       v.                                 ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20   Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21   the Court will GRANT Plaintiff's motion for summary judgment and DENY Defendant's cross-

22   motion.

23                      **I.  PROCEDURAL BACKGROUND**

24       Plaintiff applied for DIB on March 19, 2021, alleging disability beginning October 1,

25   2020.  Administrative Record ("AR") 17.[2]  The application was disapproved initially on July 23,

26
     ─────────────────────────
27   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); *Bowen v. City of New
     York*, 476 U.S. 467, 470 (1986).
28   [2]  Two copies of the AR are electronically filed as ECF Nos. 10-1 and 10-2 (AR 1 to AR 553).

                                        1

1 | 2021, and on reconsideration on October 29, 2021.  AR 17.  On July 13, 2022, ALJ Joseph Doyle

2 | presided over a telephonic hearing on Plaintiff's challenge to the disapprovals.  AR 40-

3 | 65 (transcript).  Plaintiff appeared with Harvey Sackett as counsel and testified at the hearing.

4 | AR 17, 41, 44.  Vocational Expert ("VE") Daniel McKinney also testified.  AR 17, 41, 57.

5 | On September 7, 2022, the ALJ issued an unfavorable decision, finding Plaintiff "not

6 | disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).

7 | AR 17-29 (decision), 30-33 (exhibit list).  On August 29, 2023, the Appeals Council denied

8 | Plaintiff's request for review, leaving the ALJ's decision as the final decision of the

9 | Commissioner.  AR 1-5 (decision and additional exhibit list).

10 | Plaintiff filed this action on October 30, 2023.  ECF No. 1.  The parties consented to the

11 | jurisdiction of a magistrate judge.  ECF Nos. 6, 8-9.  Cross-motions for summary judgment, based

12 | on the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 15

13 | (Plaintiff's summary judgment motion), 17 (Commissioner's summary judgment motion).

14 | Plaintiff submitted a reply brief on May 29, 2024.  ECF No. 18.  The Commissioner submitted a

15 | notice of supplemental authority on June 14, 2024, which the Court also reviewed and considered.

16 | ECF No. 19 (noting publication of *Stiffler v. O'Malley*, 102 F.4th 1102 (9th Cir. 2024)).

## II.  FACTUAL BACKGROUND

18 | Plaintiff was born on November 2, 1962, and accordingly was, at age 57, an individual of

19 | advanced age under the regulations as of the alleged disability onset date.  AR 18; *see* 20 C.F.R

20 | § 404.1563(e).  Plaintiff finished Sawyer Business College in 1981 and can communicate in

21 | English.  AR 218, 220.  She worked as a prison office technician from December 2003 to March

22 | 2020 and a Dollar Tree cashier from June to October 2020.  AR 220-21.

23 | Asserted conditions include cognitive impairment, insomnia, Barrett's esophagus,

24 | microscopic colitis, and chronic fatigue.  AR 219.  Dr. Deon Tadlock, M.D., has prescribed

25 | omeprazole to treat Barrett's esophagus and trazodone to treat insomnia.  AR 221-22.

## III.  LEGAL STANDARDS

27 | The Commissioner's decision that a claimant is not disabled will be upheld "if it is

28 | supported by substantial evidence and if the Commissioner applied the correct legal standards."

1  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

2  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  *Andrews*

3  *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

4        Substantial evidence is "more than a mere scintilla," but "may be less than a

5  preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

6  evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

7  *Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from

8  the record can constitute substantial evidence, only those 'reasonably drawn from the record' will

9  suffice."  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

10        Although this court cannot substitute its discretion for that of the Commissioner, the court

11  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

12  evidence that detracts from the [Commissioner's] conclusion."  *Desrosiers v. Secretary of HHS*,

13  846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The

14  court must consider both evidence that supports and evidence that detracts from the ALJ's

15  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

16        "The ALJ is responsible for determining credibility, resolving conflicts in medical

17  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

18  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

19  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*,

20  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

21  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*

22  *v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

23  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

24  evidence that the ALJ did not discuss").

25        The court will not reverse the Commissioner's decision if it is based on harmless error,

26  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

27  ultimate nondisability determination.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.

28  ////

2006) (quoting *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

DIB is available for every eligible individual who is "disabled." 42 U.S.C. § 423(a)(1)(E). Aside from blind individuals over the age of 55, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: depressive disorder; anxiety disorder; and posttraumatic stress disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ found] that the claimant has the residual functional capacity [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the performance of simple, routine, and repetitive tasks; work in a low-stress job, defined as one having only occasional decision-making and occasional changes in the work setting; and occasional interaction with the public and coworkers.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on November 2, 1962, and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date. (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

1

2       10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a).

3

4

5       11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of this decision (20 CFR 404.1520(g)).

6

7   AR 19-28.

8       As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and

9   223(d) of Title II of the Act.  AR 29.

10                **VI.  ANALYSIS**

11   **A.  The ALJ Did Not Need to Order Additional Examination**

12       After reviewing the standard for evaluating medical opinions, the ALJ reviewed the

13   October 2021 administrative medical findings of two State agency consultants.  AR 25-26.  One

14   consultant found that Plaintiff does not suffer from a severe physical impairment, while a

15   psychological consultant concluded that her mental impairments were also non-severe.  AR 25.

16   The ALJ acknowledged that each expert "has a high level of understanding of the Social Security

17   disability program and enjoys a review of all the available evidence in the record when forming

18   his opinion."  AR 25.  Upon review of the record, however, the ALJ found the psychological

19   consultant's opinion unpersuasive.  AR 25-26.  The ALJ found that while the consultant's report

20   adequately supported the findings therein, the updated medical record and Plaintiff's subjective

21   complaints suggested she needed "more than minimal, work-related limitations."  AR 26.

22       These consultants' opinions were the only opinions the ALJ discussed.  Instead of

23   discussing other opinions, the ALJ that that he declined to consider "evidence that is inherently

24   neither valuable nor persuasive to the issue of whether the claimant is disabled" and "findings that

25   there was insufficient evidence to reach a conclusion regarding the severity and limiting effects of

26   the claimant's impairments[.]"  AR 26.

27       Plaintiff argues that because the ALJ rejected the psychological consultant's findings and

28   had no medical opinion from treating physicians, he had no opinion on which to base his RFC

1   determination.  ECF No. 15 at 14.  She cites regulations admonishing claimants that if "your

2   medical sources cannot or will not give us sufficient medical evidence about your impairment for

3   us to determine whether you are disabled or blind, we may ask you to have one or more physical

4   or mental examinations or tests."  *Id.* (quoting 20 C.F.R. § 404.1517).  Plaintiff then cites *Reed v.*

5   *Massanari* to argue that although the regulations do not require an agency-ordered examination in

6   every case, such an examination is required when either "additional evidence needed is not

7   contained in the records" or there is "ambiguity or insufficiency in the evidence [that] must be

8   resolved."  ECF No. 15 at 15 (citing 270 F.3d 838, 842 (9th Cir. 2001) (internal citations

9   omitted)).  She concludes that because the evidence as a whole was insufficient for the ALJ to

10   make a determination as to mental impairment, the ALJ should have ordered a consultative

11   examination instead of basing the limitations on his own lay opinion.  ECF No. 15 at 14-15.

12        Plaintiff's argument implies that the record is necessarily insufficient if the ALJ's decision

13   to discount medical opinion is not supported by some other medical opinion.  *Reed* does not

14   support such a sweeping requirement.  In *Reed*, the ALJ acknowledged that based on the record, a

15   consultative examination by a rheumatologist "would have been appropriate."  *See* 270 F.3d at

16   843.  The sole reason for choosing not to order one was that the ALJ presumed both available

17   rheumatologists were likely to falsely find the plaintiff disabled because they found "everybody"

18   disabled.  *Id.*  *Reed* does not address whether an ALJ must find the medical record insufficient

19   whenever the ALJ finds a particular opinion in the record unpersuasive.

20        Both before and after 2017 amendments to applicable regulations, ALJs have been

21   assumed to be somewhat "capable of independently reviewing and forming conclusions about

22   medical evidence to discharge their statutory duty to determine whether a claimant is disabled and

23   cannot work."  *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).  Accordingly, the Ninth

24   Circuit refused in *Farlow* to compel an ALJ to categorically adopt "uncontested opinions from

25   non-examining physicians[,]" even when that opinion is the only functional assessment in the

26   record.  *Id.*  The court noted that the ALJ had appropriately found this medical opinion

27   inconsistent with the record because 2015 test results were inconsistent with the 2013 results the

28   opinion cited.  *Id.* at 489.  Nor did the Ninth Circuit imply that in doing so, the ALJ was required

1  to order an examination to supply a new medical opinion and replace the rejected one.

2         Plaintiff has failed to demonstrate that the ALJ was required to order a consultative

3  examination.  The court need not address Defendant's counterargument that Plaintiff and her

4  counsel waived any argument about the sufficiency of the record by saying "the matter stands

5  submitted for your decision" after they were unable to obtain more evidence from Dr. Kimberly

6  Schuster, LMFT.  *See* ECF No. 17 at 4-5 (citing AR 44, 277; *Meanel v. Apfel*, 172 F.3d 1111,

7  1115 (9th Cir. 1999)).

8         **B.  The ALJ Erred in Rejecting Plaintiff's Subjective Testimony**

9         1.  Testimony and Holding

10        At the hearing, Plaintiff testified that she first began experiencing digestive issues like

11  diarrhea in January 2019, but did not have the problem examined at Kaiser Hospitals until early

12  2020.  AR 46.  By then Plaintiff was nauseated most of the time and had a hard time eating or

13  drinking.  AR 46.  Between the tests and possibly contracting COVID-19 during this period,

14  though never confirmed, she was lethargic and fatigued for a few weeks.  AR 47.  She was

15  eventually diagnosed with Barrett's esophagus and microscopic colitis, both autoimmune

16  diseases, and decided not to continue working in a high-stress environment like a prison.  AR 47.

17        At the same time, Plaintiff reportedly became anxious and depressed, in part because her

18  employer was adding new responsibilities to her position.  AR 47-48.  She sought treatment for a

19  month during a depressive episode in mid-2019, but otherwise was too ashamed to seek help for

20  her mental health as of quitting her job in September 2020.  AR 48-49.  In Fall 2020, however,

21  her primary physician Dr. Talbot referred her to a psychologist, Dr. Donal Van Fossan.  AR 49-

22  50.  During that period, Plaintiff struggled to find the right words among her vocabulary and lost

23  all visual memory, which was previously been sharp.  AR 50.  Dr. Talbot theorized that these

24  cognitive issues stemmed from psychological issues like depression and anxiety.  AR 50.

25        In January 2022, Plaintiff called 911 for help due to suicidal ideation.  AR 50-51.  Plaintiff

26  testified that she thought about how it was so cold outside she could just lie under a pine tree until

27  she froze to death.  AR 51.  It was the simplest form of suicide she ever imagined, which made

28  her worried she might try executing it.  AR 51.  She continued to have occasional thoughts that

1   she would be better off dead in light of her other conditions.  AR 51.

2          As of the hearing, Plaintiff testified to being on two different psychological medications.

3   AR 51-52.  Plaintiff took 40 milligrams of Prozac for anxiety during the day and 150 milligrams

4   of Seroquel to stabilize her mood and help her sleep at night.  AR 52.  She was on the waitlist for

5   long-term therapy and treatment from a psychiatrist, whom she believed would increase her

6   dosages based on her levels of anxiety.  AR 52.  The anxiety and depression were particularly

7   triggered by any sort of violence or other situation that would require her to think quickly. AR 53.

8   Plaintiff believed that her symptoms would keep her from working.  AR 52-53.

9          Plaintiff testified that she can only drive short distances without getting out of the car in

10  between.  AR 53.  She mostly drives to the grocery store and the doctor.  AR 53.  Because of her

11  low appetite, she takes a long time deciding what to buy when grocery shopping.  AR 53.

12  Plaintiff further testified that she lives with her adult son and daughter, who take care of most

13  household chores.  AR 53-54.  Plaintiff herself just cleans her own area reasonably well, cleans

14  out the cat's litter box, and occasionally washes some dishes.  AR 54.

15         Plaintiff's attorney asked whether Plaintiff could operate a photocopy machine, which

16  VEs often use as a gauge for whether a claimant can conduct simple, routine tasks.  AR 54-55.

17  Plaintiff estimated she could do it for 15 consecutive minutes before becoming mentally drained,

18  could not do it for more than two hours at a time, and could not do it for more than four hours per

19  day.  AR 55-56.

20         The ALJ held that the medical evidence did not support the alleged severity of plaintiff's

21  symptoms.  AR 24.  He cited a March 2021 neurological evaluation, where she missed one point

22  during a mental exam "for recall of three objects" but had no difficulty in various other tests.  AR

23  24 (citing AR 419).  Her provider associated her cognitive changes with depression and anxiety

24  and prescribed sertraline, which plaintiff unilaterally stopped taking due to the side effects.  AR

25  24.  Plaintiff still admitted to improvements through July 2021, particularly after a change in

26  prescription to nortriptyline without side-effects.  AR 24.

27         The ALJ then noted that the record does not reflect further treatment until January 2022,

28  when Plaintiff complained of suicidal ideation due in part to past trauma.  AR 24.  Plaintiff's

1    condition improved through hospitalization and medication changes, followed by six weeks of

2    outpatient treatment paired with prescriptions of Prozac and Seroquel.  AR 24.  By the end of this

3    treatment, Plaintiff reportedly had good mood, insight, and judgment; normal speech; a clear and

4    organized thought process; no suicidal ideation; and a good prognosis from her provider

5    contingent on continued compliance with prescribed treatment.  AR 24.  Plaintiff subsequently

6    enrolled in outpatient behavioral health and continued with receipt of medication.  AR 24.  Office

7    visit notes from 2022 show her as "well-groomed, alert, fully oriented, and with stable mood and

8    congruent affect" as well as balanced thinking.  AR 24.

9        2.   Governing Law

10   Evaluating a claimant's subjective testimony involves a two-step process.  First, the ALJ

11   must "determine whether the claimant has presented objective medical evidence of an underlying

12   impairment which could reasonably be expected to produce the pain or other symptoms

13   alleged….In this analysis, the claimant is not required to show that her impairment could

14   reasonably be expected to cause the severity of the symptom she has alleged; she need only show

15   that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d

16   995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or

17   fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing objective evidence

18   of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's

19   testimony about the severity of such symptoms unless there is "'specific, clear and convincing

20   reasons for doing so.'"  *Id.* at 1014-15 (internal citations omitted).

21   While an ALJ's credibility finding must be properly supported and sufficiently specific to

22   ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective

23   statements, an ALJ is also not "required to believe every allegation" of disability.  *Fair v. Bowen*,

24   885 F.2d 597, 603 (9th Cir. 1989).  So long as substantial evidence supports an ALJ's credibility

25   finding, a court "may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 958

26   (9th Cir. 2002).[3]

27

28   [3]  Defendant argues that the clear and convincing standard used in the Ninth Circuit conflicts with

1   As Plaintiff notes, an ALJ should not penalize claimants "for attempting to lead normal

2   lives in the face of their limitations."  ECF No. 15 at 16; *Reddick v. Chater*, 157 F.3d 715, 722

3   (9th Cir. 1998).  An ALJ may, however, reference a claimant's daily routine if it is inconsistent

4   with the degree of disability the claimant alleges.  *See Molina*, 674 F.3d at 1113 (even where

5   claimant's everyday activities reflect difficulty in functioning, they may be grounds for

6   discrediting the claimant's testimony to the extent that they contradict claims of a totally

7   debilitating impairment).

8          3.   The ALJ Overstated the Efficacy of Treatment

9          Citing *Nguyen v. Chater*, Plaintiff argues that because shame is a common element of

10  major depression, the ALJ should not penalize her failure to seek treatment until hospitalization.

11  ECF No. 15 at 17-18 (citing 100 F.3d 1462, 1465 (9th Cir. 1996)).  The Ninth Circuit in *Nguyen*

12  noted that depression is underreported, but only to prohibit ALJs from using the lack of prior

13  treatment history as a reason to discredit the medical opinion of an examining physician.  100

14  F.3d at 1464-65.  It did, however, favorably cite a Sixth Circuit opinion that overturned an ALJ's

15  rejection of subjective testimony as to similar symptoms "given a perceived paucity of medical

16  proof."  *Id.* at 1465 (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).

17         A fair reading of the ALJ's decision is that it did not meaningfully discount Plaintiff's

18  subjective symptoms based on a thin treatment history.  Although the ALJ asserts Plaintiff

19  "presented for neurological evaluation of depression, trouble thinking, and anxiety in March

20  2021," the ALJ also acknowledges Plaintiff had a history of symptoms dating back as early as

21  2019.  AR 24.  After crediting signs of improvement from a July 2021 visit, the ALJ states that

22  plaintiff did not require additional treatment until her hospitalization in January 2022.  AR 24.

23  The ALJ effectively presumes that until such treatment occurred, Plaintiff's condition was

24  comparable to how it was in July 2021.

25  the "substantial evidence" standard in 42 U.S.C. § 405(g).  ECF No. 17 at 8, n.3.  The Ninth

26  Circuit itself rejected this argument in *Garrison*: "The government's suggestion that we should
    apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be

27  rejected."  759 F.3d at 1015 n.18.  The Ninth Circuit continues to require the application of the
    "specific, clear and convincing" standard in this context.  *See Ferguson v. O'Malley*, 95 F.4th

28  1194, 1198-1199 (9th Cir. 2024).

1      This logic still appears to ignore that "[c]ycles of improvement and debilitating symptoms

2   are a common occurrence" for a mental disability; as a result, an ALJ cannot reject a plaintiff's

3   testimony merely due to waxing and waning intensity of symptoms. *Garrison*, 759 F.3d at 1017.

4   When a person "suffers from severe panic attacks, anxiety, and depression[,]" improvement does

5   not necessarily mean that that the mental disability no longer affects the plaintiff's ability to

6   function in the workplace. *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.

7   2001)). Symptoms must be interpreted in the context of the patient's overall well-being, with the

8   understanding that symptoms that would prevent someone from functioning in the workplace may

9   not manifest "while being treated and while limiting environmental stressors[.]" *Garrison*, 759

10  F.3d at 1017.

11     During visits across February and March 2020, various doctors found that Plaintiff was

12  alert and oriented, had a normal speech and gait, and had an appropriate mood and affect. AR

13  345, 353, 359. This includes a March 6, 2020 visit where Plaintiff visited Dr. Sara Sani with

14  complaints of symptoms that were previously associated with anxiety, though they could not be

15  reproduced during the visit. AR 351.

16     During visits in both September and October 2020, Dr. Kenneth Weisner noted that

17  Plaintiff complained of both myalgia and fatigue. AR 284, 287. During the September 2020

18  visit, Dr. Weisner diagnosed Plaintiff with central hypersensitivity, chronic fatigue syndrome, and

19  "Post covert id [*sic*] type symptoms with fatigue and cognitive dysfunctioning[.]" AR 289.[4] In

20  October 2020, Dr. Weisner similarly diagnosed Plaintiff with "Post COVID 19 fatigue and

21  arthralgias and myalgias[.]" AR 285.

22     On May 10, 2021, Plaintiff was referred to Dr. Van Fossan based on her complaints of

23  fatigue, depression, difficulty sleeping, anxiety, and difficulties in concentration and memory.

24  AR 419. At the time, she was not taking anything to treat her anxiety, but she was taking 100

25  milligrams of trazodone to help her sleep. AR 419. She denied suicidal ideation or thoughts of

26  self-harm. AR 419. She scored a 29 out of 30 on "the Folstein mini mental status exam[,]"

---

27

28  [4] The undersigned assumes that "covert id" is an erroneous transcription of an intended reference
    to "COVID-19."

1  missing only one point based on her recall of three objects.  AR 419.  Dr. Van Fossan believed

2  her cognitive changes were secondary to depression and anxiety.  AR 420.  He prescribed her 25

3  milligrams of Sertraline, to be gradually increased to 50 milligrams, and recommended a follow-

4  up visit in six weeks.  AR 420.

5  During the follow-up visit June 21, 2021, Plaintiff admitted to stopping the trazodone and

6  Zoloft due to concerns about the side effects, particularly headaches and feeling stiff.  AR 421.

7  She reported subsequent improvement, like the lifting of any brain fog, but was still depressed

8  and requested an MRI scan.  AR 421.  Dr. Van Fossan acknowledged the improvements but still

9  tied her remaining symptoms to anxiety and depression.  AR 421.  He supported her proposal of

10  getting an MRI despite doubt that her depression had any neuropathological cause.  AR 421.

11  Because she still wanted antidepressant treatment, he started her on 10 milligrams of nortriptyline

12  and recommended a follow-up appointment a month after.  AR 421.

13  At the July 28, 2021 follow-up appointment, Plaintiff reported tolerating her nortriptyline

14  prescription without side effects.  AR 424.  The June 29 MRI results were available for review

15  and did not reveal any intracranial hemorrhaging, infarctions, or cerebral atrophy.  AR 422, 424.

16  Although there were some hyperintensities among the white matter, the administering physician

17  attributed them to "age-related white matter microvascular ischemia."  AR 422, 424.  Dr. Van

18  Fossan agreed that any white matter hyperintensities were unlikely to be of clinical significance.

19  AR 424.  He recommended that they continue the current treatment plan and schedule a follow-up

20  appointment in four months.  AR 424.

21  On January 4, 2022, Plaintiff visited Dr. Lawrence Burchett as part of psychiatric hold for

22  suicidal ideation under California Welfare and Institutions Code Section 5150.  AR 494, 499.

23  She reported that she had not attempted suicide on that particular day, but she had thought about

24  taking pills and heard voices asking why she was not dead yet.  AR 493.  The report found that

25  Plaintiff had the appropriate mood and affect, but also noted she had major depression in addition

26  to her acute suicidal ideation.  AR 494, 497.

27  The next day, Plaintiff told Dr. Karamjit Singh that she had "grandiose delusion[s]" about

28  killing herself by walking into the wilderness, starving herself, or setting herself on fire.  AR 436.

1  Plaintiff reported poor sleep, appetite, energy, and memory. AR 436. Dr. Singh observed that

2  Plaintiff was cooperative and hyperverbal, but she had a depressed mood and experienced

3  auditory hallucinations. AR 437. Dr. Singh diagnosed her with major depressive disorder,

4  complemented by severe psychotic features, but ruled out bipolar disorder. AR 437. Plaintiff

5  was likely to benefit from treatment and group activities, in addition to Prozac and Seroquel

6  prescriptions to stabilize her mood. AR 437-38.

7      On January 11, Dr. Singh explained that Plaintiff's "flight of ideas" had worsened until

8  the Seroquel dosage was increased. AR 433. She now was "linear and logical" without any

9  hallucinations, suicidal ideation, signs of mania, or other behavioral concerns. AR 433. Dr.

10  Singh still diagnosed her with major depressive disorder, albeit without psychotic features, but no

11  longer eliminated the possibility of bipolar disorder. AR 434. Plaintiff was discharged with

12  instructions to follow up in a week. AR 434.

13      On March 4, 2022, Dr. Fayez Romman noted that after attending group sessions and

14  continuing to take Prozac and Seroquel, Plaintiff denied any additional suicidal ideation of

15  hallucinations. AR 431. Dr. Romman advised her that the prognosis was good if she continued

16  such treatment and stopped using cannabis. AR 432.

17      On March 29, 2022, Dr. Kimberly Schuster of the El Dorado Community Health Center

18  conducted a virtual risk assessment. AR 455-57. Plaintiff had moderate depression and admitted

19  that she had thought about death or self-harm on multiple days over the past two weeks. AR 455.

20  Dr. Schuster still found that Plaintiff had a stable mood and affect and was not a risk to herself or

21  others, but she did present for both depression and PTSD. AR 456. During a follow-up meeting

22  the next day, Dr. Schuster encouraged her to keep sharing and exploring her past before trauma

23  treatment. AR 453. After exploring various options Plaintiff chose to do short-term therapy for

24  stabilization while waiting for an opportunity to begin long-term therapy. AR 453.

25      On April 20, 2022, Plaintiff reported to Dr. Schuster that she was feeling "steady" that

26  week and wanted to unpack prior memories of self-loathing. AR 461. On April 27, Plaintiff had

27  a stable mood and affect and felt her appetite improve after conducting a relaxation exercise, but

28  trying to recall a traumatic childhood memory made her nauseous. AR 463. During both visits,

14

1    Dr. Schuster concluded that Plaintiff's condition had improved, but they were still working on it.

2    AR 462, 464.

3        On May 11, 2022, despite her stable mood and congruent affect, Plaintiff reported that her

4    anxiety was worsening her preexisting stomach pain.  AR 468.  She also reported consistent

5    feelings of worthlessness and disconnect with others.  AR 468.  Dr. Schuster again concluded that

6    Plaintiff's condition had improved but was not completely resolved.  AR 469.  Dr. Schuster's

7    notes from two sessions later that month noted that she could not comment on whether Plaintiff

8    completed her "Treatment Plan" because these sessions were part of short-term therapy.  AR 471,

9    473.  This short-term therapy was slated to end soon after.  AR 473.

10       In summary, Plaintiff's medical history reflects various high and low points rather than

11   consistent improvement.  Plaintiff reported signs of anxiety, myalgia, and fatigue as early as

12   2020.  AR 284, 287, 351.  Attempts to treat her condition with medication in 2021 were initially

13   unsuccessful.  AR 419-421.  Although treatment showed some promise in late July 2021, the

14   follow-up appointment recommended for four months later never occurred.  AR 422, 424.  She

15   was instead hospitalized at the beginning of 2022 for severe suicidal ideation.  AR 493-94.

16       The ALJ also misconstrues the efficacy of Plaintiff's treatment after her January 2022

17   hospitalization.  AR 25.  Plaintiff did tell Dr. Romman in early March 2022 that she no longer had

18   suicidal thoughts.  AR 431.  By the end of that month, however, she reported multiple moments

19   of suicidal ideation in just a two-week period.  AR 455.  Despite some improvement through

20   subsequent short-term therapy, Dr. Schuster never asserted that Plaintiff's issues were

21   permanently resolved.  AR 462, 464, 469, 471, 473.  Plaintiff had elected to start long-term

22   therapy when the opportunity arose, but it never did.  AR 453.

23       The medical record does not support the ALJ's decision to discount Plaintiff's subjective

24   testimony based on temporary improvements in her symptoms.

25       4.   Unpersuasive Medical Opinions Cannot Discredit Subjective Testimony

26       After finding the psychological consultant's opinion unpersuasive, the ALJ cites "[t]he

27   combination of the claimant's treatment records and the lack of contrary reliable medical opinion

28   evidence" as not justifying a more limited RFC than in this decision.  AR 26.  Defendant

1  interprets this to mean that the ALJ discounted Plaintiff's subjective testimony based on such

2  medical opinions.  ECF No. 17 at 10.  Citing *Molina*, Defendant argues that the ALJ can still rely

3  on an unpersuasive opinion to the extent that it contradicts any extreme allegations Plaintiff made

4  of disabling pain.  *Id.* (citing 674 F.3d at 1113).[5]

5      The Court may not affirm an ALJ's decision "on a ground upon which he did not rely."

6  *Orn,* 495 F.3d at 630.  The ALJ did not discount Plaintiff's testimony as inconsistent with the

7  psychological consultant's opinion.  The ALJ did the reverse, finding the opinion unpersuasive in

8  part due to Plaintiff's subjective "complaints of diminished cognitive function, reduced focus,

9  depressed and anxious mood with mental fatigue, and poor stress tolerance[.]"  AR 26.

10     Assuming *arguendo* that the ALJ did rely on the psychological consultant's opinion,

11  Defendant cites no authority suggesting that an ALJ may rely on an opinion he finds

12  unpersuasive.  The ALJ in *Molina* had discredited the plaintiff's testimony as inconsistent with

13  the findings of both Dr. Hunter Yost and the state examining physician.  674 F.3d at 1113.  Under

14  the applicable standards, Dr. Yost's opinion as an examining physician was presumed credible

15  unless the ALJ provided "specific, legitimate reasons" to discredit it.  *Id.* at 1111 (citing *Valentine*

16  *v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009)).  This does not demonstrate that

17  Dr. Yost's opinion would have otherwise supported the ALJ's conclusion that the plaintiff's

18  testimony was not credible.

19     5.  The Error was Not Harmless

20     The Court must now evaluate whether the ALJ's error is harmless, meaning it was

21  "inconsequential to the ultimate nondisability determination."  *Stout*, 454 F.3d at 1055.  Where, as

22  in this case, the ALJ provides specific reasons supporting a conclusion, "[s]o long as there

23  remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error

24  'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed

---

[5]  Although Defendant extends this argument to both medical opinions discussed in the ALJ's
decision, one of these focuses on symptoms stemming from Plaintiff's physical impairments.
ECF No. 17 at 10; AR 25.  This opinion is irrelevant because Plaintiff challenges the ALJ's
decision to discount her testimony solely as it relates to her mental impairments.  *See* ECF No. 15
at 16-19.

harmless and does not warrant reversal." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004)).  In other words, if an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own. *Stout*, 454 F.3d at 1055 (citing *Batson*, 359 F.3d at 1197).

The "relevant inquiry … is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162.  For example, multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]"  *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence[.]'") (internal citations omitted).

Defendant does not articulate why any error in the ALJ's analysis of Plaintiff's subjective testimony would be harmless.  The ALJ's decision to discount such testimony was based solely on the treatment record, which the ALJ misinterpreted.  *See supra* IV.B.1, IV.B.3; AR 24.  The ALJ therefore failed to provide a legally valid reason for his decision.  Because the error was not harmless, remand or reversal is merited.  *See infra*.

**C.  The ALJ's Step Five Analysis Does Not Reflect Additional Error**

1.  Testimony and Decision

The ALJ's decision found that Plaintiff's RFC encompassed:

> a full range of work at all exertional levels but with the following nonexertional limitations: the performance of simple, routine, and repetitive tasks; work in a low-stress job, defined as one having only occasional decision-making and occasional changes in the work setting; and occasional interaction with the public and coworkers.

AR 23.  At the hearing, the ALJ asked the VE to consider a hypothetical individual who was only capable of medium work but shared the same nonexertional limitations as in the RFC.  AR 62. The VE confirmed that this would eliminate all prior work, but the individual would still be capable of other competitive jobs.  AR 62.  The VE gave "Cleaner, Hospital", "Packager, Hand",

1    and "Packager, Machine" as examples while noting that all three required "SVP 2" to perform.

2    AR 62-63.  The ALJ cited this testimony when finding Plaintiff "capable of making a successful

3    adjustment to other work that exists in significant numbers in the national economy."  AR 28.

4           The ALJ then asked the VE to consider if that hypothetical individual was consistently

5    off-task more than 10% of the time, outside of scheduled breaks, or alternatively if the individual

6    would consistently miss one day of work per month.  AR 63.  The VE replied that in both cases,

7    the loss of productivity would render the individual unable to sustain competitive employment in

8    any occupation.  AR 63.

9           2.   Governing Law

10          In determining whether a claimant can do past relevant work based on the current RFC,

11   the Commissioner may both ask the claimant about his past work and use a vocational expert to

12   provide necessary evidence.  20 C.F.R. §404.1560(b)(2).  The vocational expert "may offer

13   relevant evidence within his or her expertise or knowledge concerning the physical and mental

14   demands of a claimant's past relevant work, either as the claimant actually performed it or as

15   generally performed in the national economy."  *Id.*  If a vocational expert's hypothetical does not

16   reflect all the claimant's limitations, however, then the "expert's testimony has no evidentiary

17   value to support a finding that the claimant can perform jobs in the national economy."  *Matthews*

18   *v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th

19   Cir. 1991)).

20          3.   Any Argument for Further Adjustment of the RFC is Moot

21          Plaintiff makes two arguments that effectively concern whether the RFC included all

22   applicable limitations.  First, limiting Plaintiff to "low stress" work does not adequately reflect

23   what triggers her anxiety, including "[a]nything that puts a great amount of pressure on me to act

24   quickly."  ECF No. 15 at 16; AR 53.  Second, the RFC generally does not reflect the ALJ's Step

25   Three findings as to Plaintiff's degree of impairment in each of the "paragraph B" categories of

26   functioning.  ECF No. 15 at 22; AR 22.

27          Because the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective

28   testimony, the ALJ will need to revisit this testimony and by extension the RFC.  *See supra* VI.B.

18

1    Any objections to the RFC as established by the ALJ are therefore moot.  In any case, a finding of

2    a limitation "at step three does not necessarily translate to a work-related functional limitation for

3    the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  The

4    ALJ appropriately warned Plaintiff that the assessment used at Steps Two and Three of the

5    analysis is not as comprehensive as the analysis used to formulate an RFC.  AR 23.

6        4.  The Hypothetical Individual Discussed in the VE's Testimony Matches the RFC

7        Although issues with the RFC arguably render other arguments concerning the Step Five

8    analysis moot, one merits discussion to avoid disputes on remand.  The Dictionary of

9    Occupational Titles ("DOT") states that all three cited occupations require Level 2 Reasoning.

10    DOT (4th ed. 1991) § 323.687-010, 1991 WL 672782 (Cleaner, Hospital); *id.*, § 920.587-018,

11    1991 WL 687916 (Packager, Hand); *id.*, § 920.685-078, 1991 WL 687942 (Packager, Machine).

12    The DOT defines Level 2 Reasoning as the ability to address problems with "few concrete

13    variables in or from standardized situations." *Id.*, App. C, § III, 1991 WL 688702.  Plaintiff

14    argues that by limiting her to "occasional changes in the work setting," even the current RFC

15    limits her to jobs that require Level 1 Reasoning, where an employee confronts "standardized

16    situations with occasional or no variables".  ECF No. 15 at 23 (citing DOT (4th ed. 1991) App. C,

17    § III); AR 23.

18        An ALJ may rely on VE testimony that conflicts with the DOT so long as there is

19    "persuasive testimony" to support the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th

20    Cir. 2007) (citation omitted).  Before resolving a conflict between the VE's testimony and

21    the DOT, "the ALJ must first determine whether a conflict exists" at all. *Id.*  A conflict only

22    exists if it is "obvious or apparent[,]" such that the VE testimony is "at odds with the [DOT's]

23    listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d

24    804, 808 (9th Cir. 2016).

25        The ALJ found the VE's testimony "consistent with the information contained in the

26    Dictionary of Occupational Titles."  AR 28.  At issue is whether the ALJ erred in such assessment

27    and therefore failed to require the VE to explain any inconsistencies.

28        Defendant argues that the Reasoning level listed in a DOT entry cannot itself demonstrate

1   conflict with VE testimony.  ECF No. 17 at 13 (citing *Padilla v. Saul*, 852 Fed.Appx. 277, 279

2   (9th Cir. 2021)).  The Ninth Circuit did hold in *Padilla* that even if the DOT asserts a job requires

3   Level 2 Reasoning, that alone does not render "changing essential job functions more than

4   occasionally" an essential, integral, or expected part of the job.  *Padilla*, 852 Fed.Appx. at 279.

5   Based on DOT descriptions of the jobs themselves, the Ninth Circuit found it unlikely "that either

6   occupation requires more than occasional changes in essential job functions."  *Id.*  Defendant

7   argues that none of the three definitions at issue here suggest more than occasional variation in

8   performing tasks.  ECF No. 17 at 13-14.

9       Published opinions predating *Padilla* place more emphasis on the DOT's stated reasoning

10  level.  In *Zavalin v. Colvin*, for example, the Ninth Circuit found "apparent conflict" between

11  Level 3 Reasoning and an RFC limiting a plaintiff to simple, repetitive tasks.  778 F.3d 842, 847

12  (9th Cir. 2015).  It found such an RFC more consistent with "detailed but uncomplicated

13  instructions" for "problems involving a few variables," as in Level 2 Reasoning, than "written,

14  oral, or diagrammatic" instructions for "problems involving several concrete variables" as in

15  Level 3.  *Id*.

16      Subsequent decisions, however, suggest that Level 2 Reasoning is not inconsistent with an

17  RFC permitting "occasional changes in the work setting."  AR 23.  In *Leach v. Kijazaki*, the Ninth

18  Circuit remanded a decision because the ALJ asked the VE about a hypothetical person who can

19  handle "*occasional* changes to the work setting" despite an RFC for "*few* work setting changes."

20  70 F.4th 1251, 1258 (9th Cir. 2023) (emphasis original).  This is the element of the RFC that

21  Plaintiff now quotes as precluding jobs with Level 2 Reasoning.  ECF No. 15 at 23.  The Ninth

22  Circuit later acknowledged, however, a "distinction between limitations in the workplace

23  environment, and limitations on the tasks performed."  *Stiffler v. O'Malley*, 102 F.4th 1102, 1109

24  (9th Cir. 2024).  Reasoning levels limit the situational variables within an assigned task, whereas

25  workplace setting concerns "the location or physical surroundings of the area where the worker's

26  duties are performed."  *Id.*  Limits to changes in a workplace environment therefore do not create

27  an inherent conflict with jobs requiring Level 2 Reasoning.  *Id.* at 1110.

28      If the current RFC were adequate, reliance on the VE's testimony would be justified.

1

2 **D.**

 **E.  Remand for Further Proceedings is Merited**

3   It is for the ALJ to determine in the first instance whether Plaintiff has severe impairments

4 and, ultimately, whether she is disabled under the Act.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173

5 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

6 Security Administration in the first instance, not with a district court").  "Remand for further

7 administrative proceedings is appropriate if enhancement of the record would be useful."

8 *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

9   Plaintiff argues that under the credit-as-true rule, the Court should avoid further

10 proceedings and instead remand with instructions for the ALJ to calculate and award benefits.

11 ECF No. 15 at 24-25 (citing *Garrison*, 759 F.3d at 1019).  The credit-as-true rule applies if:

12

13    (1) the record has been fully developed and further administrative
    proceedings would serve no useful purpose; (2) the ALJ has failed to
    provide legally sufficient reasons for rejecting evidence, whether

14    claimant testimony or medical opinion; and (3) if the improperly
    discredited evidence were credited as true, the ALJ would be

15    required to find the claimant disabled on remand.

16 *Garrison*, 759 F.3d at 1020.  Plaintiff argues that this rule applies because the VE conceded that a

17 hypothetical individual whose RFC reflected her subjective testimony could not sustain

18 competitive employment.  ECF No. 15 at 25 (citing AR 61).  The VE did testify that an employee

19 who is consistently off-task more than 10% of the time outside of scheduled breaks, or

20 consistently misses one day of work per month, is unable to sustain competitive employment in

21 any occupation.  AR 63.  Plaintiff's subjective testimony included the assertion that she can only

22 do the simplest and most routine of work tasks, using the photocopier, for about four hours in an

23 eight-hour workday.  AR 55-56.

24   The credit-as-true rule "envisions 'some flexibility'" and does not preclude further

25 proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in

26 fact, disabled."  *Garrison*, 759 F.3d at 1020-21 (citations omitted).  Defendant argues this applies

27 here because of inconsistencies between plaintiff's subjective testimony and the medical evidence

28 in the record.  ECF No. 17 at 15 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 495-96 (9th Cir.

2015)).  Defendant specifically notes that neither of the medical opinions found severe mental impairment, thereby creating serious doubt as to whether Plaintiff is disabled.  ECF No. 17 at 15-16; AR 25-26, 85-87.

Defendant's argument as to remand is mildly inconsistent with its defense of the ALJ's treatment of the medical opinions.  Defendant contested Plaintiff's position that after rejecting the two medical opinions in the record, the ALJ was required to order additional examination to obtain an opinion that agreed with his RFC.  *Compare* ECF No. 15 at 14-15 *with* ECF No. 17 at 6-7.  As discussed above, the Court agreed with Defendant that the ALJ was under no duty to further develop the record.  *See supra* VI.A.

An ALJ nevertheless retains the authority to order additional examination if he believes current sources do not provide enough medical evidence for a determination.  20 C.F.R. § 404.1517.  Upon crediting Plaintiff's testimony, as this order requires, the ALJ may decide to seek additional opinion evidence instead of relying on his own interpretation of medical evidence alone.  The Court exercises is discretion to provide the ALJ with this opportunity.

Remand for further proceedings is the appropriate remedy.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;

2.  Defendant's cross-motion for summary judgment (ECF No. 17) is DENIED;

3.  This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4.  The Clerk of the Court shall enter judgment and close this case.

DATED: July 25, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

22